**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROSILENE HEMME, Special Administrator of the Estate of HAUS HEMME, deceased, *et al.*, | |
| Plaintiffs, | Civil Action No. 1:09-CV-7239 |
| vs. | |
| AIRBUS S.A.S., *et al.*, | District Judge Charles P. Kocoras |
| Defendants. | Magistrate Judge Maria Valdez |
| THALES AVIONICS S.A., | |
| Third-Party Plaintiff, | |
| vs. | |
| SOCIÉTÉ AIR FRANCE, | |
| Third-Party Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF THIRD-PARTY DEFENDANT
SOCIÉTÉ AIR FRANCE'S MOTION TO DISMISS THALES AVIONICS S.A.'S
THIRD-PARTY COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ii

PRELIMINARY STATEMENT ..................................................................................................1

PROCEDURAL HISTORY ..........................................................................................................2

SUMMARY OF ARGUMENT ....................................................................................................2

ARGUMENT ................................................................................................................................3

I.  THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE THIRD-PARTY COMPLAINT WITH RESPECT TO THE PASSENGER CLAIMS .......................................................................................................................3

    A.  The United States Is Not One Of The Forums Designated By Article 33 .............4

    B.  The Unambiguous Text Of The Montreal Convention Mandates That Any Action, "However Founded," For Passenger Injury Or Death During International Transportation By Air Be Brought In A Forum Designated By Article 33 .........................................................................................5

    C.  Because The Third-Party Claims For Contribution And Indemnity Arise From Plaintiffs' Claims For Damages During International Carriage By Air, They Are Subject To The Same Conditions And Limitations Of The Montreal Convention As The Underlying Claims............................................7

    D.  The *Nantucket* Decision Contains Flawed Reasoning ..........................................10

    E.  Allowing The Third-Party Claims To Be Brought In The U.S. Would Undermine The Goals Of The Montreal Convention ...........................................11

    F.  The Drafting History Of The Montreal Convention Reflects That Article 29 Was To Encompass All Types of Claims Against the Carrier........................12

    G.  Courts In France, A Sister Signatory, Have Applied The Jurisdictional Requirements To Contribution Actions Against The Carrier ...............................13

II.  THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE THIRD-PARTY COMPLAINT WITH RESPECT TO THE CREW MEMBER CLAIM.................................................................................................................14

CONCLUSION............................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Air France v. Saks*,
    470 U.S. 392 (1985)................................................................................4

*Am. Home Assur. Co. v. Kuehne & Nagel (AG & Co.) KG*,
    544 F. Supp. 2d 261 (S.D.N.Y. 2008)....................................................8

*Baah v. Virgin Atlantic Airways Ltd.*,
    473 F. Supp. 2d 591 (S.D.N.Y. 2007).....................................................5

*Carroll v. United Airlines, Inc.*,
    739 A.2d 442 (N.J. Super. App. Div. 1999) ...........................................9

*Chan v. Korean Air Lines, Ltd.*,
    490 U.S. 122 (1989)................................................................................4

*Chubb & Son, Inc. v. Asiana Airlines*,
    214 F.3d 301 (2d Cir. 2000)...................................................................12

*Coyle v. P. T. Garuda Indonesia*,
    363 F.3d 979 (9th Cir. 2004) ..................................................................4

*Data General Corp. v. Air Express Int'l Co.*,
    676 F. Supp. 538 (S.D.N.Y. 1988)..........................................................8

*Ehrlich v. Am. Airlines, Inc.*,
    360 F.3d 366 (2d Cir. 2004)....................................................................3

*El Al Israel Airlines, Ltd. v. Tseng*,
    525 U.S. 155 (1999) ...................................................................... *passim*

*Holloway v. Gamble-Skogmo, Inc.*,
    274 F. Supp. 321 (N.D Ill. 1967) ............................................................9

*Husserl v. Swiss Air Transport Co.*,
    388 F. Supp. 1238 (S.D.N.Y. 1975)......................................................6, 7

*In Re Air Crash Disaster*,
    86 F.3d 498 (6th Cir. 1996) ....................................................................9

*In re Air Crash Near Nantucket Island, Mass., on Oct. 31, 1999*,
    340 F. Supp. 2d 240 (E.D.N.Y. 2004) ................................................10, 11

*Kabbani v. Int'l Total Servs.*,
   805 F. Supp. 1033 (D.D.C. 1992) ........................................................................10

*Kenya Airways v. Bonneau et al.*,
   Court of Cassation, Civ. Div. 1, July 11, 2006 .......................................................14

*King v. Am. Airlines, Inc.*,
   284 F.3d 352 (2d Cir. 2000).................................................................................10

*L.B. Smith, Inc. v. Circle Air Freight Corp.*,
   488 N.Y.S.2d 547 (N.Y. Sup. Ct. 1985) ..............................................................7, 8

*Magnus Elecs., Inc. v. Royal Bank of Canada*,
   611 F. Supp. 436 (N.D. Ill. 1985) ...........................................................................8

*Martin v. Lociccero*,
   917 F. Supp. 178 (W.D.N.Y. 1995) .......................................................................12

*Mitchell, Shackleton & Co. v. Air Express Int'l, Inc.*,
   704 F. Supp. 524 (S.D.N.Y. 1989) ..........................................................................8

*Motorola, Inc. v. MSAS Cargo Int'l, Inc.*,
   42 F. Supp. 2d 952 (N.D. Cal. 1998) .......................................................................8

*Motorola, Inc. v. Kuehne & Nagel, Inc.*,
   208 F. Supp. 2d 910 (N.D. Ill. 2002) .......................................................................8

*Olaya v. Am. Airlines, Inc.*,
   2009 WL 3242116 (E.D.N.Y. Oct. 6, 2009)....................................................8, 9, 11

*Oriental Fire & Gen. Ins. Co. v. Citizens Nat'l Bank of Decatur*,
   220 Ill. App. 3d 671 (1991) .....................................................................................8

*Osborne v. British Airways PLC Corp.*,
   198 F. Supp. 2d 901 (S.D. Tex. 2002) .....................................................................5

*Royal Ins. Co. v. Emery Air Freight Corp.*,
   834 F. Supp. 633 (S.D.N.Y. 1993)...........................................................................8

*Sabena Belgian World Airlines v. United Airlines, Inc.*,
   773 F. Supp. 1117 (N.D. Ill. 1991) ..........................................................................8

*Scanpartners et al. v. Sanofi et al.*,
   Court of Appeal, Paris, 1st Ch., Oct. 15, 2009 .......................................................14

*Société Fatton v. Société France Lames et al.*,
   Court of Appeal, Riom, Comm. Div., Sept. 13, 2000 .............................................14

iii

*Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co.*,
    522 F.3d 776 (7th Cir. 2008) ................................................................3

*Split End Ltd. v. Dimerco Express (Phils) Inc.*,
    1986 WL 2199 (S.D.N.Y. Feb. 11, 1986)..............................................8

*Ste. Pratt v. Sterling Airways*,
    Court of First Instance, Paris, 1st Ch., Mar. 15, 1985 ........................14

*Vallero v. Burlington N. R.R. Co.*,
    749 F. Supp. 908 (C.D. Ill. 1990) ........................................................9

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(1)...........................................................................1

Fed. R. Civ. P. 14(a)..............................................................................12

Convention for the Unification of Certain Rules for International Carriage by Air,
concluded at Montreal, Canada, May 28, 1999, *reprinted in* S. Treaty Doc. 106-45,
1999 WL 33292734 ..................................................................... *passim*

Convention for the Unification of Certain Rules Relating to International Transportation
by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11 (1934), *reprinted in*
note following 49 U.S.C.A. § 40105 (1997)........................................ *passim*

International Civil Aviation Organization, Legal Affairs and External Bureau, *Treaty
Collection,* at http://www.icao.int/icao/en/leb/mtl99.pdf ...........................................4

International Civil Aviation Organization, International Conference on Air Law
(Montreal), Vol. I, *Minutes,* May 1999, Doc. 9775-DC/2 .........................................13

## PRELIMINARY STATEMENT

Plaintiffs commenced this action to recover damages for the deaths of passengers on board Air France Flight 447, a flight from Rio de Janeiro to Paris, which was involved in an accident over the Atlantic Ocean on June 1, 2009.  Complaint, ¶ 3.  Plaintiffs sued more than a dozen defendants, but did not sue Société Air France ("Air France").  Pursuant to Fed. R. Civ. P. Rule 12(b)(1), Air France respectfully submits this memorandum of law in support of its motion to dismiss, for lack of subject matter jurisdiction, the Third-Party Complaint of Thales Avionics S.A. ("Thales") against Air France, which seeks contribution and indemnity in connection with Plaintiffs' claims.

Air France's conspicuous absence as a direct defendant is easy to explain.  Courts of the United States lack subject matter jurisdiction over passenger death claims against Air France because such claims are governed exclusively by the Montreal Convention ("MC").[1]  None of the five forums where these claims can be brought, as specified in Article 33 of the MC, is in the United States.  The MC's jurisdictional limitations are not limited to a passenger's direct claims and are applied to third-party claims as well.  Simply stated, since Thales' third-party claims are derivative of Plaintiffs' claims for which there is no subject matter jurisdiction against Air France, there is likewise no subject matter jurisdiction for Thales' third-party claims.

Additionally, the Court does not have subject matter jurisdiction over claims arising from the death of Clara Amado, a member of the Air France cabin crew, because the French "*Tribunal des affaires de securite sociale*" has exclusive jurisdiction over such claims.[2]  Any rights or remedies for her death are governed by her employment contract with Air France and French law**.**  Moreover, no third-party action will lie against Air France under these circumstances.

---

[1] Convention for the Unification of Certain Rules for International Carriage by Air, concluded at Montreal, Canada, May 28, 1999, *reprinted in* S. Treaty Doc. 106-45, 1999 WL 33292734.

[2] The decedent Clara Amado, identified in the Complaint and Third-Party Complaint as a passenger, was a member of the Air France cabin crew.  Declaration of Gail Muntner ("Muntner Decl."), ¶ 10.

## PROCEDURAL HISTORY

Plaintiffs commenced this action in the Circuit Court of Cook County, Illinois on October 19, 2009, naming fifteen defendants – but not Air France.  On November 18, 2009, defendant Intel Corporation removed the case to this Court.  On January 21, 2010, Thales filed a Third-Party Complaint against Air France and, on February 4, 2010, proffered service on Air France.[3]

## SUMMARY OF ARGUMENT

The MC establishes the exclusive cause of action and remedy against an air carrier for passenger injury and death during international carriage by air.  Accordingly, any claims against Air France for the deaths of the passengers in this case, including contribution and indemnity claims, must be brought in accordance with the MC's terms and conditions.  Article 33, one of these conditions, identifies five forums to sue an air carrier for injury or death: (1) the carrier's place of domicile; (2) the carrier's principal place of business; (3) the place of business through which the contract of carriage was made; (4) the place of destination of the carriage; and (5) the principal and permanent residence of the passenger.[4]  MC, Art. 33 (1), (2). With respect to the passenger decedents here, none of these five forums is the United States.

The MC expressly contemplates that its provisions will cover *any* action for damages against a carrier arising from the carriage of passengers during international carriage, *however founded*, and regardless of who are the *persons* with the right to bring the action.  MC, Art. 29. This includes the third-party claims in the instant action.  In fact, courts in the United States have routinely applied the MC and its predecessor treaty, the Warsaw Convention ("WC"),[5] to third-party actions seeking contribution or indemnity in connection with underlying claims that are

---

[3] Air France respectfully submits that Thales' method of service at O'Hare Airport was defective, and Air France reserves all rights with respect thereto.

[4] The complete text of Article 33 (1) and (2) is set forth on page 6, *infra*.

[5] Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11 (1934), *reprinted in* note following 49 U.S.C.A. § 40105 (1997).

plainly governed by these treaties; to do otherwise would be counter to the objectives of the treaties and the intentions of their signatories. Accordingly, Thales' third-party complaint for contribution and indemnity regarding the passenger claims must be dismissed.

The third-party claims for contribution and indemnity with respect to the Air France crew member also must be dismissed for lack of subject matter jurisdiction. As explained in the accompanying Declaration of Nicole I. Tellier, a French attorney, a claim against Air France by this employee's family arises from an accident in the course of employment and, therefore, would be regulated by the French Social Security Code. Any legal action related to employment accidents must be brought before the French "*Tribunal des affaires de securite sociale*" (TASS).

## ARGUMENT

### I.

### THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE THIRD-PARTY COMPLAINT WITH RESPECT TO THE PASSENGER CLAIMS

The MC is a treaty of the United States that covers "all international carriage of persons, baggage or cargo performed by aircraft for reward." MC, Art. 1(1). It "unifies and replaces the system of liability that derives from the Warsaw Convention." *Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 371 n.4 (2d Cir. 2004). While the MC recognizes "the importance of ensuring protection of the interests of consumers in international carriage by air and the need for equitable compensation," it "did not alter the original Warsaw Convention goal of maintaining limited and predictable damage amounts for airlines." *Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co.*, 522 F.3d 776, 780-81 (7th Cir. 2008) (quoting preamble to MC). A central purpose of the MC remains the unification of rules governing claims that arise from international air carriage.[6] *See Ehrlich*, 360 F.3d at 371 n.4 (MC "harmonize[s] the hodgepodge of supplementary amendments

---

[6] The WC had two primary goals: (1) to establish worldwide uniform laws for claims arising out of international carriage of passengers, baggage and cargo, and (2) to limit the liability of the carrier for such claims. *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 169 (1999).

and intercarrier agreements" making up the Warsaw system).

Any interpretation of the MC must begin "with the text of the treaty and the context in which the written words are used." *Air France v. Saks*, 470 U.S. 392, 397 (1985). Where the text is clear, a court may not "alter, amend, or add to any treaty, by inserting any clause, whether small or great, important or trivial." *Chan v. Korean Air Lines, Ltd.,* 490 U.S. 122, 135 (1989) (citation omitted). Fundamentally, the purposes of a treaty must be upheld and meaningful effect is to be given to the expectations of the contracting parties. *Saks*, 470 U.S. at 399. Here, it is evident from a plain reading of the MC that Thales' third-party claims for contribution and indemnity are governed by, and subject to, the MC's terms and conditions, including its jurisdictional restrictions.[7]

## A.      The United States Is Not One Of The Forums Designated By Article 33

The passenger decedents in this case were traveling with tickets that provided for "international carriage" within the meaning of Article 1 of the MC.  Both the places of origin and destination of each passenger's carriage were located in a country (Brazil, France or Hungary) that is a party to the MC.[8]  Article 33(1) and (2) of the MC mandate that an action for damages be brought in one of five specified places:  (1) the "domicile of the carrier;" (2) the "principal place of business" of the carrier; (3) the carrier's "place of business through which the contract has been made;" (4) the "place of destination;" or (5)  the  passenger's  "principal  and permanent residence." MC, Art. 33(1), (2).

If the United States is not one of the locations identified in Article 33, then the Court lacks treaty jurisdiction over the action.  *See Coyle v. P. T. Garuda Indonesia*, 363 F.3d 979, 986 (9th Cir. 2004) ("unless one of these enumerated places is within the United States, no American

---

[7] Only when the written words are not clear may a court look beyond the text to the history of the treaty, the negotiations, and the practical construction adopted by the parties. The "most natural meaning" of the text may only be contradicted by "clear drafting history." *Chan*, 490 U.S. at 134 n.5.

[8] *See* International Civil Aviation Organization, Legal Affairs and External Bureau, *Treaty Collection,* at http://www.icao.int/icao/en/leb/mtl99.pdf (containing current list of parties to Montreal Convention).

court can take cognizance of a suit predicated on the [Montreal] Convention"); *Baah v. Virgin Atlantic Airways Ltd.*, 473 F. Supp. 2d 591, 594 (S.D.N.Y. 2007) (no Article 33 jurisdiction); *Osborne v. British Airways PLC Corp.*, 198 F. Supp. 2d 901, 905 (S.D. Tex. 2002) (no WC jurisdiction where Article 28 requirements are not met).

Air France is a corporation duly organized and existing under the laws of France with its principal place of business at Tremblay-en-France, France.   *See* Muntner Decl., ¶ 11. Accordingly, the first two forums are located in France.  The computer images of the electronic tickets of the passenger decedents also reflect that not one of the tickets was purchased or issued in the United States or provided for a United States destination.  *Id.* at ¶¶ 8-9.  Additionally, the Complaint expressly states that none of the decedents was a citizen or resident of the United States.  Complaint, ¶ 1.  Thus, MC jurisdiction is lacking in the United States with respect to the Plaintiffs' passenger claims.

**B.     The Unambiguous Text Of The Montreal Convention Mandates That Any Action, "However Founded," For Passenger Injury Or Death During International Transportation By Air Be Brought In A Forum Designated By Article 33**

The liability and jurisdictional provisions relating to passenger injury during international carriage make clear that the MC applies to *any* action against the carrier for such injury:

**Article 1 – Scope of Application:** [t]his Convention applies to *all* international carriage of persons…performed by aircraft for reward…;

**Article 17 – Death and Injury of Passengers – Damage to Baggage:** [t]he carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft...;

**Article 29 – Basis of Claims:** In the carriage of passengers, baggage and cargo, *any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability* as are set out in this Convention without prejudice to the question as to *who are the persons* who have the right to bring suit and *what are their respective rights*.  In any such action, punitive, exemplary or any other non-compensatory damages shall not be recoverable.

**Article 33 -- Jurisdiction:** 1. *An action for damages must be brought*, at the option of the plaintiff, in the territory of one of the States Parties, either before the court of the domicile of the carrier or of its principal place of business, or where it has a place of business through which the contract has been made or before the court at the place of destination.

2.  In respect of damages resulting from death or injury of a passenger, *an action may be brought* before one of the courts mentioned in paragraph 1 of this Article, or in the territory of a State Party in which at the time of the accident the passenger has his or her principal and permanent residence and to or from which the carrier operates services for the carriage of passengers by air, either on its own aircraft, or on another carrier's aircraft pursuant to a commercial agreement, and in which that carrier conducts its business of carriage of passengers by air from premises leased or owned by the carrier itself or by another carrier with which it has a commercial agreement.

MC, Arts. 1, 17, 29, 33 (1) and (2) (emphasis added).

None of these articles restricts the MC's applicability, cause of action, conditions and limits, or jurisdiction to actions brought *solely* by passengers or their representatives.  The text of Article 29 (*Basis of Claim*) is broadly worded and refers to "*any action* for damages."  Likewise, Article 33 states that "*an action* for damages" (not a "*passenger's* action for damages") "must be brought" in certain forums.  Here, Thales' contribution and indemnity claims fall squarely within the plain language of MC – they qualify as "any action for damages" related to the carriage of passengers, and, therefore, are subject to the "conditions and such limits of liability as set out in this convention."  Article 33 clearly is one of the "conditions" of the MC.

The "however founded" language also does not limit claims to those brought by contracting parties or only by or on behalf of a passenger; rather the specific wording of Article 29 states that the Convention applies "without prejudice" as to "who are the *persons* who have the right to bring the suit" and "what are their respective rights."  The term "persons" is significant as it necessarily includes *non-passengers*.  Article 29's text is demonstrably broad enough to encompass third-party actions that assert claims arising from passenger injury.

In *Husserl v. Swiss Air Transport Co.*, 388 F. Supp. 1238 (S.D.N.Y. 1975), the district

court described the MC's Article 29 counterpart under the WC (Article 24):

> Article 24 does not, however, limit the kind of cause of action on which the relief may be founded; rather it provides that any action based on the injuries specified in Article 17, "however founded", i.e., regardless of the type of action on which relief is founded, can only be brought subject to the conditions and limitations established by the Warsaw system. Presumably, the reason for the use of the phrase "however founded" is twofold: *to accommodate all of the multifarious bases on which a claim might be founded in different countries, whether under code law or common law, whether under contract or tort, etc.; and to include all bases on which a claim seeking relief for an injury might be founded in any one country.*  In other words, if the injury occurs as described in Article 17, any relief available is subject to the conditions and limitations established by the Warsaw system, regardless of the particular cause of action which forms the basis on which a plaintiff could seek relief.

*Id.* at 1245 (emphasis added).

The text of Article 29 was taken from Montreal Protocol No. 4 (an amendment to the WC) which actually expanded Article 24's wording and confirmed its broad preemptive scope. *See* Explanatory Note to MC Art. 29, 1999 WL 33292734 at *22; *Tseng*, 525 U.S. at  174 (Montreal Protocol No. 4 clarified WC's "rule of exclusivity").  The express terms of the MC require that any action against the carrier that seeks damages from the international carriage of passengers is subject to the limitations and conditions of the MC.

**C.     Because The Third-Party Claims For Contribution And Indemnity Arise From Plaintiffs' Claims For Damages During International Carriage By Air, They Are Subject To The Same Conditions And Limitations Of The Montreal Convention As The Underlying Claims**

Several courts that have directly addressed the issue have concluded that the conditions and limits of the MC and WC necessarily govern third-party claims for contribution and indemnity.  As explained in *L.B. Smith, Inc. v. Circle Air Freight Corp.*, 488 N.Y.S.2d 547 (N.Y. Sup. Ct. 1985), one of the first courts to address the applicability of the WC's terms to a third-party action for contribution:

> The provisions of Article 24, being liberally construed to effectuate its purposes, to wit, to limit the liability of air carriers, an action "however founded" would include an action for contribution and would therefore be subject to the aforesaid

conditions and limitations of the Convention.

*Id.* at 549 (citation omitted).

The simple logic of *L.B. Smith* has been followed by numerous courts, including in this District. *See, e.g., Am. Home Assur. Co. v. Kuehne & Nagel (AG & Co.) KG*, 544 F. Supp. 2d 261, 263 (S.D.N.Y. 2008) (applying MC's two-year limitation period to contribution action); *Motorola, Inc. v. Kuehne & Nagel, Inc.,* 208 F. Supp. 2d 910, 915-17 (N.D. Ill. 2002) (rejecting freight forwarder's cross-claim for attorneys' fees because they would exceed the WC limits); *Motorola, Inc. v. MSAS Cargo Int'l, Inc.*, 42 F. Supp. 2d 952, 956 (N.D. Cal. 1998); *Royal Ins. Co. v. Emery Air Freight Corp.,* 834 F. Supp. 633, 634 (S.D.N.Y. 1993); *Data General Corp. v. Air Express Int'l Co.,* 676 F. Supp. 538, 540 (S.D.N.Y. 1988); *Magnus Elecs., Inc. v. Royal Bank of Canada*, 611 F. Supp. 436, 440 (N.D. Ill. 1985) (WC's two-year period applied to cross-claim); *Split End Ltd. v. Dimerco Express (Phils) Inc.*, 1986 WL 2199, at *4 (S.D.N.Y. Feb. 11, 1986); *see also Oriental Fire & Gen. Ins. Co v. Citizens Nat'l Bank of Decatur*, 220 Ill. App. 3d 671, 676-77 (1991) (WC's two-year period barred third-party action for contribution).[9]

For example, in *Olaya v. Am. Airlines, Inc.*, 2009 WL 3242116 (E.D.N.Y. Oct. 6, 2009), Article 31's two-year limitation period (which acts as a condition precedent to suit) was applied to cross-claims for contribution and indemnity. Plaintiff had sued a funeral home and airline for sending decedent's remains to the wrong country. In discussing the preemptive effect of Article 29, and whether the cross-claimant funeral home's contribution or indemnity claims should be barred by Article 31, the court stated:

> Because [plaintiff's] claims are based upon damages allegedly suffered by the plaintiff as a consequence of [the airline's] international shipment of the cargo, and *because the [funeral home's] cross-claims for indemnification and contribution arose from the same transaction, all claims against [the airline] are*

---

[9] *Compare Sabena Belgian World Airlines v. United Airlines, Inc.*, 773 F. Supp. 1117 (N.D. Ill. 1991) (two-year period did not apply to carrier's contribution claim against its agent); *Mitchell, Shackleton & Co. v. Air Express Int'l, Inc.*, 704 F. Supp. 524 (S.D.N.Y. 1989).  These cases represent a minority view regarding the limitations period and, in any event, applied the WC's liability limits to the cross-claims.

8

*governed exclusively by the MC, including the [funeral home's] cross-claims.*

*Id*. at * 2 (emphasis added) (citation omitted).

Similarly, in *In Re Air Crash Disaster*, 86 F.3d 498, 544 (6th Cir. 1996), the Sixth Circuit recognized that an aircraft manufacturer's claim for indemnification against the airline arose from the underlying passenger death claims and, therefore, was subject to the terms and limitations of the WC.   The Court of Appeals determined that, but for the airline's willful misconduct, the manufacturer's indemnity claim against the carrier would have been subject to Article 22's liability limitation under the WC.

And in *Carroll v. United Airlines, Inc.*, 739 A.2d 442, 448 (N.J. Super. App. Div. 1999), the appellate court affirmed enforcement of the treaty's jurisdictional rules in a third-party action by the carrier against its wheelchair agent for injuries sustained by a passenger while disembarking.   The court found that treaty jurisdiction was proper in the United States over the passenger's claim against the airline <u>and</u> over the airline's claim against the contractor, rejecting the contractor's argument that its liability arose from the service contract.   The court held that the indemnification claim against the wheelchair agent arose from the covered Article 17 accident and, therefore, was subject to the WC's jurisdictional conditions.   *Id.* at 446-48.

The rationale underlying the foregoing decisions is clear – it is to prevent a third-party plaintiff's circumvention of the WC and MC's limitations and conditions when the underlying claim, upon which the third-party claim is based, is governed by one of these treaties.   Here, Thales' third-party claims for contribution and indemnity against Air France clearly derive from the Plaintiffs' passenger death claims, which unequivocally are governed by the MC.   *See Vallero v. Burlington N. R.R. Co.*, 749 F. Supp. 908, 910 (C.D. Ill. 1990) ("[w]here the impleader of a third party defendant is for contribution for liability in the underlying [] claim, the third party action is derivative of the main claim"); *Holloway v. Gamble-Skogmo, Inc.*, 274 F. Supp.

321, 323 (N.D Ill. 1967) ("it is difficult to imagine a third party complaint which is not 'dependent' on the main cause of action").

By filing this third-party action, Thales improperly seeks to circumvent the MC by rewriting its terms to restrict its application *only* to actions brought by passengers or their estates. Such a limited reading is inconsistent with the MC's text and the basic rules of treaty interpretation, which require that a treaty "be construed broadly to advance its goals." *Kabbani v. Int'l Total Servs.*, 805 F. Supp. 1033, 1037 (D.D.C. 1992); *see King v. Am. Airlines, Inc.*, 284 F.3d 352, 362 (2d Cir. 2000) ("It is not for the courts to rewrite the terms of a treaty between sovereign nations.").

The application of the MC depends *only* upon the international nature of the transportation and an event causing *carrier liability* for passenger injury during that transportation. *Tseng*, 525 U.S. at 172. It does not depend on the nature of the claim (direct claim, cross-claim, or third-party claim) being asserted or the identity of the party (passenger or third-party) asserting it. Thales' third-party action is clearly "based on" Air France's alleged liability arising from an Article 17 accident and, therefore, can only be brought subject to the conditions and limits of the MC.

### D.     The *Nantucket* Decision Contains Flawed Reasoning

One reported district court opinion has erroneously held that manufacturers may pursue cross-claims and third-party claims in a case governed by the WC in a forum where treaty jurisdiction is otherwise lacking over the underlying passenger claim. In *In re Air Crash Near Nantucket Island, Mass., on Oct. 31, 1999*, 340 F. Supp. 2d 240 (E.D.N.Y. 2004), the district court dismissed claims by the estates of two passengers who died in the crash of EgyptAir Flight 990, finding that treaty jurisdiction was lacking under Article 28 of the WC.[10] The court,

---

[10] EgyptAir's domicile and principal place of business were located in Egypt; the contracts of

however, then determined that the WC's terms and conditions did not apply to the cross-claims and third-party claims for contribution and indemnity asserted by the aircraft manufacturer and a component parts manufacturer against EgyptAir.

The significance of *Nantucket*, if any, is that since its issuance, it stands alone.  Air France is aware of no decision that follows *Nantucket* in permitting manufacturers to pursue the claim that Thales seeks to pursue here.  Significantly, in his much more recent decision in *Olaya v. Am. Airlines*, 2009 WL 3242116 (E.D.N.Y. Oct. 6, 2009), Judge Block, who decided *Nantucket*, held that the MC two-year limitation period <u>applied</u> to cross-claims for contribution and indemnity precisely because they arose from the same transaction as the plaintiff's claim.  Accordingly, all claims against the carrier for damages arising from an international shipment were "governed exclusively by the [MC], *including the … cross-claims*."  *Id.* at *2 (emphasis added).

As discussed above, the plain text of the MC does not support a limitation, like that imposed by the *Nantucket* court, on the MC's applicability to third-party actions.  There is no language in the treaty that states that only a "passenger" can sue for injury.  Rather, the treaty contains very broad language to cover *any action* that arises from the carriage of passengers during international transportation.  *See, e.g.,* MC, Art. 17.

**E.     Allowing The Third-Party Claims To Be Brought In The U.S. Would Undermine The Goals Of The Montreal Convention**

Dismissal of Thales' contribution and indemnity claims is consistent with, and gives effect to, the primary purposes of the MC and WC, and notably, uniformity in rules regarding carrier liability.  *See Tseng*, 525 U.S. at 169 ("cardinal purpose" of the treaty regime is to "achiev[e] uniformity of rules governing claims arising from international air transportation").

---

transportation for these passengers were made in Egypt; and the destination of their carriage was Egypt.

Articles 17 and 29 of the MC further this fundamental goal by ensuring that any action arising from international carriage by air within the meaning of Article 1 can be brought only subject to the terms and conditions of the MC.   The goal of uniformity is advanced by enforcement of *all* of the terms and conditions of carrier liability, including the jurisdictional conditions of Article 33, and by preventing parties from taking an "a la carte" approach to the treaty's provisions.  *See Chubb & Son, Inc. v. Asiana Airlines*, 214 F.3d 301, 312 (2d Cir. 2000) ("the United States did not adhere to a portion of a treaty when it ratified the Original Warsaw Convention; it adhered to an entire treaty that encompassed an entire liability scheme").

Allowing the third-party action to proceed in the United States would "end run" the MC's express restrictions on the permissible jurisdictions for determining carrier liability under Article 17. When cross-claims or third-party claims are asserted against another party, that third-party defendant (here, Air France) is entitled to all of the defenses available to it in the underlying plaintiff's action.  *See* Fed. R. Civ. P. 14(a) ("third-party defendant, shall make any defenses to the third-party plaintiff's claim as provided in Rule 12 …"); *Martin v. Lociccero*, 917 F. Supp. 178, 183 (W.D.N.Y. 1995) ("once a party is named as a third-party defendant, it may assert defenses or claims it may have against the original plaintiff").

Thus, Air France, in effect, would be asserting the same defenses in the third-party action as it would in a direct passenger case and, consequently, would be, as a matter of fact and law, reduced to litigating the passenger action in a forum not designated by MC Article 33.  This clearly runs counter to the plain meaning of the MC's text and would improperly eviscerate Article 33's forum restrictions in a passenger death claim in the underlying action.

**F.     The Drafting History Of The Montreal Convention Reflects That Article 29 Was To Encompass All Types Of Claims Against the Carrier**

Even if the Court were to look beyond the text of the Convention, which is not necessary in these circumstances because the text is clear, the minutes of the Montreal Conference reflect that the

drafters intended Article 29 to be broadly construed to enforce the MC's conditions and limits of liability in *any* action for damage brought against the carrier.   In discussing whether Article 29 should specifically identify those persons who had the right to bring an action, the Chairman of the Conference stated:

> [T]he Convention, which primarily addressed the liability question of limits, had been careful to provide in Article [29] (Basis of Claims) that an action for damages – however founded – could only be brought on the condition and subject to the limits of liability without prejudice to the question as to who were the persons who had the right to bring the suit and what were their respective rights. *Article [29] in effect put fences around how great an exposure the carrier would be liable to, by ensuring that whatever may be the nature of the action and however brought, it was subject to the conditions of the Convention.*   The more delicate issues as to the persons who had the right to bring the action were not really governed as such by the Convention, but were left to national law, *subject only to the provision that one remained within the limits set by the Convention and conditions subject to which the claims may be brought.*

International Civil Aviation Organization, International Conference on Air Law (Montreal), Vol. I, *Minutes*, May 1999, Doc. 9775-DC/2, at 189-90 (emphasis added).[11]

The Chairman further explained that the "purpose behind [Article 29 *(Basis of Claim)*] was to ensure that, in circumstances in which the Convention applied, it was not possible to circumvent the provisions by bringing an action for damages in the carriage of passengers, baggage and cargo in contract or in tort or otherwise. Once the Convention applied, its conditions and limits of liability were applicable." *Id.* at 235.  It is evident that the overriding concern was that all actions against the carrier relating to liability under the treaty be subject to the MC's limits and conditions, including its jurisdictional restrictions.

**G.   Courts In France, A Sister Signatory, Have Applied The Jurisdictional Requirements To Contribution Actions Against The Carrier**

The unambiguous text of the MC is dispositive as to the issue before this Court. Nevertheless, it is instructive that several French court decisions have applied the WC and MC's

---

[11] *See* Exh. "A" to the Declaration of Judith R. Nemsick ("Nemsick Decl.") (relevant excerpts).

jurisdictional provisions to third-party contribution claims.[12]  For example, in *Ste. Pratt v. Sterling Airways*, Court of First Instance, Paris, 1st Ch., Mar. 15, 1985, the court dismissed an engine manufacturer's contribution action against a Danish airline because the court lacked jurisdiction under Article 28 of the WC.  The court held:  "the liability of the air carrier cannot be sought other than under the conditions and limits provided by the Warsaw Convention, regardless of the persons who implement them and regardless of the status in which they claim to act."

Likewise, in *Scanpartners et al. v. Sanofi et al.,* Court of Appeal, Paris, 1st Ch., Oct. 15, 2009 and *Société Fatton v. Société France Lames et al.*, Court of Appeal, Riom, Comm. Div., Sept. 13, 2000, the Courts of Appeal held that the WC jurisdictional requirements, not French procedural law, applied to third-party claims against the carriers or their agents.  These opinions are consistent with the landmark decision *Kenya Airways v. Bonneau et al.,* Court of Cassation, Civ. Div. 1, July 11, 2006, which held that the families of passengers who died in a Kenya Airways accident could not sue jointly the aircraft manufacturer and carrier in the same forum where Article 28 jurisdiction was lacking over the carrier.

## II.

### THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE THIRD-PARTY COMPLAINT WITH RESPECT TO THE CREW MEMBER CLAIM

The death action involving the Air France crew member, Clara Amado, also cannot be brought by Plaintiffs in the United States and must be dismissed for lack of subject matter jurisdiction.  As discussed in the Declaration of Nicole I. Tellier, a French attorney, a claim against Air France by this employee's family arises from an accident in the course of employment and, therefore, is regulated by the French Social Security Code.  Declaration of Nicole I. Tellier, ¶¶ 6, 10.  Pursuant to this Code, the French "*Tribunal des affaires de securite*

---

[12] Courts, including the U.S. Supreme Court, have held that sister signatory decisions on treaty interpretation are "entitled to considerable weight."  *Tseng*, 525 U.S. at 176.  Copies of the French decisions are attached as Exhs. "B"-"E" to the Nemsick Decl.

*sociale*" ("Court for social security matters") has exclusive jurisdiction over claims arising from employment accidents, even if the accident occurs outside a French territory.  *Id.* at ¶¶ 8, 11, 12, 14-16.

Moreover, a third party who is not subrogated to the rights of the employee or his or her beneficiaries has no right of action against the employer. *Id.* at ¶ 18.  In sum, no legal actions for this decedent, either by the Plaintiffs or Thales, may be brought against Air France in the courts of the United States.  *Id.* at ¶ 19.

## CONCLUSION

Air France's motion to dismiss should be granted in all respects, and Thales' Third-Party Complaint for contribution and indemnity should be dismissed for lack of subject matter jurisdiction.

Respectfully submitted,

HOLLAND & KNIGHT LLP

By:  /s/ Troy D. Hoyt
    Robert E. Tonn
    Troy D. Hoyt
    131 South Dearborn Street
    30th Floor
    Chicago, Illinois  60603
    Tel No. (312) 263-3600
    Fax No. (312) 578-6666

    -and-

    HOLLAND & KNIGHT LLP
    Christopher G. Kelly
    Alan D. Reitzfeld
    31 West 52nd Street
    New York, New York  10019
    Tel No. (212) 513-3200
    Fax No. (212) 385-9010

    *Attorneys for Defendant*
    *Société Air France*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on February 10, 2010, the foregoing **MEMORANDUM OF LAW IN SUPPORT OF THIRD-PARTY DEFENDANT SOCIÉTÉ AIR FRANCE'S MOTION TO DISMISS THALES AVIONICS S.A.'S THIRD-PARTY COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION** was filed with Clerk of the Court using the CM/ECF System, which automatically transmitted a Notice of Electronic Filing to all ECF registrants.

/s/Troy D. Hoyt  

# 9151489_v1